UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anita Fisher, on behalf of herself and others similarly situated, | Case No. 19-cv-01382 (MJD/HB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Seterus, Inc., and Nationstar Mortgage LLC, | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

Plaintiff Anita Fisher filed suit, on behalf of herself and others similarly situated, against Seterus, Inc. and Nationstar Mortgage LLC (together, "Seterus" or "Defendants"),[1] alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and a claim for negligent misrepresentation. Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 8 and 10 on the ground that it is an impermissible "shotgun pleading," and under Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim upon which relief may be granted. The motion has been referred to this Court for a report and recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the following reasons, this Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

---

[1] Nationstar Mortgage LLC is the successor in interest to Seterus and is alleged to be liable for the acts attributed to Seterus Inc. (Compl. ¶ 20 [Doc. No. 1].)

1

I.      **Background**

   A.      **Factual Background**

Plaintiff Anita Fisher filed a class action Complaint against Seterus on May 24, 2019.  (Compl. [Doc. No. 1].)  Seterus is a servicer of mortgages for residential housing loans owned by Fannie Mae.  Plaintiff is a homeowner whose mortgage is serviced by Seterus.  (*Id.* ¶¶ 23, 36.)  At some point Plaintiff was in default on her mortgage payments and Seterus sent her a debt collection letter (referred to in the Complaint as the "Minnesota Final Letter" or "Letter").  (*Id.* ¶ 42–46.)  Seterus sends the Letter to all borrowers who are more than 45 days delinquent on a loan to notify them that they are in default and of the potential consequences.  (*Id.* ¶ 44).

The letter Plaintiff received had her name and address at the top and listed the amount she owed and an "expiration date" a little over a month away.  (Pl.'s Ex. A [Doc. No. 1-1].)  Relevant here, the letter also makes the following statements:

> We hereby demand that you bring your loan up-to-date ("cure this default") by payment of the amount shown above. . . .
>
> If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order on or before the Expiration Date, we will accelerate the maturity date of your loan and upon such acceleration, the ENTIRE balance of the loan, including principal, accrued interest, and all other sums due thereunder shall, at once and without further notice, become immediately due and payable.
>
> Failure to cure the default will result in acceleration of the sums secured by the mortgage and may result in the sale of the property securing the loan.  If you send only a partial payment, the loan still will be in default. Additionally, we may keep the payment and accelerate the maturity date.
>
> IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE

LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW. . . .

You have the right to reinstate your loan after acceleration. . . . If you reinstate your loan after acceleration, the loan no longer will be immediately due in full.

(*Id.*) (Capitalization in the original.)

The Letter did not specify a date when the loan will be accelerated or when it would be foreclosed, but Plaintiff argues that the most natural reading of the Letter is that it will happen *immediately* after the expiration date. (Compl. ¶ 2.) Plaintiff argues that this language leads homeowners to conclude that unless they make a "full payment" (i.e., sufficient to bring the loan out of default) by the expiration date, the entire amount of their loan will become due. (*Id.* ¶¶ 2–3.) Plaintiff alleges that this is misleading, however, because contrary to the natural reading of the Letter, it is actually Seterus's policy to *never* accelerate a loan if a payment sufficient to bring the loan less than 45 days delinquent is made before the expiration date. (*Id.*) That is, a homeowner is not actually obligated to pay the full amount of her default to avoid acceleration. Plaintiff argues that omitting this information from the Letter created a "false ultimatum" for homeowners and violates the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e(5), 1692e(10), and

3

1692f.[2]  (*Id.* ¶ 3.)   Defendants filed the instant motion on August 19, 2019.  (Mot. Dismiss [Doc. No. 13].)

### B. Related Cases in Other Districts

This case is one of several FDCPA-based lawsuits against Seterus based on virtually identical letters.  Nearly all of these sister cases have survived a motion to dismiss.  *See e.g*, *Peebles v. Seterus, Inc.*, Case No. 2:19-cv-00242-JAM-KJN, 2019 WL 4464126 (E.D. Cal September 18, 2019); *Spehr v. Seterus*, Inc., Case. No. 4:18-CV-01922, 2019 WL 4246929 (E.D. Mo. September 6, 2019); *Koepplinger v. Seterus, Inc.*, Case No. 1:17-cv-00995, 2018 WL 4055268 (M.D. N.C. August 24, 2018); *Wenger v. Seterus Inc.*, 4:18-CV-02393-MWB, 2019 WL 2119980 (M.D. Pa. May 15, 2019).  On the other hand, two have been dismissed at the pleadings stage.  *Barilla v. Seterus*, No. 2:19-cv-46-FtM-38NPM, 2019 WL 4060154 (M.D. Fla. Aug. 28, 2019); *Fordham v. Seterus,* No. 3:18-cv-13808-BRM-LHG, 2019 WL 3451738 (D. N.J. July 31, 2019).

## II. Analysis

### A. Standard of Review

Defendants argue Plaintiff has not stated a claim for violation of the FDCPA, so the Complaint should be dismissed under Rule 12(b)(6).  (Def. Mem. Supp. Mot. Dismiss at 2 [Doc. No. 16].)   Defendants also contend the Complaint should be dismissed because it is an impermissible "shotgun" pleading that does not comply with Rules 8 and 10.  (*Id.* at 26.)

---

[2] Although the Complaint was not clear, Plaintiff has explicitly disavowed seeking any relief pursuant to § 1692e(2). (Pl.'s Mem. Opp'n. Mot. Dismiss at 22–23 [Doc. No. 23].)

On a motion to dismiss, the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, on a Rule 12(b)(6) motion, a court may not consider matters outside the pleadings in assessing the sufficiency of a complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). A court may make exceptions to this rule for matters of public record, materials "necessarily embraced by" the complaint, and exhibits submitted with the complaint. *Id.* (citations omitted).

### B.    Overview of the FDCPA

The FDCPA, 15 U.S.C. §§ 1692–1692p, is a comprehensive statute that prohibits a debt collector from making a false, deceptive, or misleading representation in connection with the collection of any debt, and from using "unfair or unconscionable means to collect or attempt to collect any debt." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Janson v. Davis*, 806 F.3d 435, 437 (8th Cir. 2015).

To maintain a claim under the FDCPA, a plaintiff must allege that (1) she has been the object of collection activity arising from a consumer debt; (2) Defendant is a debt

5

collector as defined by the FDCPA; and (3) Defendant has engaged in an act or omission prohibited by the FDCPA. *Klein v. Stewart Zlimen & Jungers, Ltd.*, Civil Nos. 18-cv-658, 18-cv-710 (JRT/ECW), 2019 WL 79317, at *3 (D. Minn. 2019). The first two elements are not in contention here. The parties' disagreement is only about whether the Complaint sufficiently alleges that Seterus engaged in an act prohibited by the FDCPA.

Debt collectors are strictly liable for failure to comply with any FDCPA provision. *See Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001). Given its purpose, the FDCPA is to be construed liberally to protect the "unsophisticated consumer." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002). That said, "[w]hile this test protects consumers with below average intelligence, it also contains 'an objective element of reasonableness' which precludes liability based on 'bizarre or idiosyncratic interpretations' of collection activity." *Janson*, 806 F.3d at 437.

### C.  Plaintiff's Claims under FDCPA § 1692e

#### 1.  Acceleration

Plaintiff's claims arise under §§ 1692e(5) and 1692e(10). Those provisions read:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

The analyses for a § 1692e(5) "threat" and a § 1692e(10) "false representation" have

6

considerable overlap, and many courts have rolled them into one analysis.  *See, e.g.*, *Hill v. Accounts Receivable Services, LLC*, 888 F.3d 343, 345 (8th Cir. 2018).

The heart of Plaintiff's challenge centers on the following statement in the second paragraph of the Letter: "If **full payment** of the default amount is not received by us . . . on or before the Expiration Date**, we will accelerate** the maturity date of your loan and upon such acceleration, the ENTIRE balance of the loan . . . shall, at once and without further notice, become immediately due and payable."  (Pl.'s Ex. A ¶ 2) (emphasis added).  Plaintiff argues that the unsophisticated consumer would read this statement to mean that failure to pay the past due balance *in full* by the Expiration Date would trigger *immediate* acceleration.  The omission of information about Seterus's so-called "grace period" policy to the contrary is a false representation, Plaintiff argues, that creates a "false sense of urgency" in its reader.  (Compl. ¶ 49.)  Plaintiff does not argue that Seterus could not legally demand the full payment from Plaintiff—it legally could—but rather that because Seterus never accelerates a loan that is less than 45 days delinquent, it cannot lead a debtor to believe that it will.  (*Id.* ¶¶ 50–53.)

Defendants respond that the Letter's language was consistent with its purpose: to inform Plaintiff that the consequence of "continued non-payment" was that her loan would be accelerated "at some unspecified time in the future."  (Def. Mem. Supp. Mot. Dismiss at 2.)  *See Hubbell v. American Accounts & Advisors, Inc.*, Civil No. 13-1157 MJD/AJB, 2013 WL 5944264, *3 (D. Minn. Nov. 5, 2013) ("A letter does not violate §§ 1692e, 1692e(5), and 1692e(10) if it merely relays the possibility that some future legal action might be taken if payment is not

7

made.") (citing *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002) (holding that a letter that "convey[ed] the consequences" of inaction was not misleading)). Defendants characterize the policy as a "grace period" that allowed Seterus to operate more flexibly in order to support and "protect" struggling homeowners. (Def. Mem. Supp. Mot. Dismiss at 2–3.) Plaintiff responds that the policy is applied inflexibly and across-the-board: if a sufficient (but less than full) payment is made by the "expiration date," then Seterus *will not* accelerate the loan.

Accepting, as the Court must, Plaintiff's allegations concerning the Seterus "grace period" policy as true, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes Plaintiff has pleaded a plausible claim that the Letter amounted to a false representation under § 1692e(10) because the unsophisticated consumer could be led to conclude that her loan would certainly be accelerated if she did not pay her balance in full by the expiration date, when in fact that is not Seterus's practice.

Defendants argue they should not be penalized for a policy that promotes a lenient approach to dealing with homeowners in default. But Plaintiff does not allege that the FDCPA was violated by Seterus's leniency, but rather by the implication that it would take action that in reality it would not take.

This same argument was addressed in *Peebles v. Seterus*. The United States District Court for the Eastern District of California considered a letter (which contained virtually identical language to that here) sent by Seterus to California borrowers.

8

2019 WL 4464126, at *1.

> Seterus describes its after-the-fact leniency as a "grace period," and urges the court to see generosity where Peebles alleges deception. But the FDCPA is a strict liability statute. If Seterus's threat to immediately accelerate the maturity date of a loan absent payment of the full default amount does not mirror its actual acceleration policy, it is a false statement.

*Id.* at *4.

Defendants also argue Plaintiff has cherry-picked language to skew the meaning of the Letter, and that the Letter must be viewed in its entirety. (Def. Mem. Supp. Mot. Dismiss at 12.) Specifically, they point to a paragraph on the second page of the letter that reads "You have the right to reinstate your loan after acceleration. . . If you reinstate your loan after acceleration, the loan no longer will be immediately due in full." (Pl.'s Ex. A at 2.) Defendants argue this language would vitiate any false sense of urgency that might arguably have been created by the rest of the letter. (Def. Mem. Supp. Mot. Dismiss at 13.)

Defendants are correct that "language in a debt-collection letter cannot be viewed in isolation; the letter must be viewed 'as a whole' to determine whether it runs afoul of the FDCPA." *Adams v. J.C. Christensen & Assoc., Inc.*, 777 F.Supp.2d 1193, 1196 (D. Minn. 2011). And Defendants may ultimately prevail on their argument that a borrower—even one of "below average sophistication or intelligence"—would be put at ease by this reassurance. But in the context of a motion to dismiss, the Court must only determine whether Plaintiff has pleaded a plausible cause of action, not whether, ultimately, Plaintiff should and will prevail on the merits. Drawing all reasonable inferences in Plaintiff's favor, the Court

9

cannot conclude that the additional language in the Letter would necessarily assuage the concern aroused by the earlier paragraphs—at least not in the mind of a less sophisticated borrower.

Defendants also contend that even if the Letter did contain a misrepresentation, it was not a *material* misrepresentation. To plead a claim under § 1692e, Plaintiff must show that the false, misleading, unfair, or unconscionable representation is material. *Hill*, 888 F.3d at 345–46. To be materially misleading, the information must "undermine the ability of the consumer to obtain information to intelligently make a decision regarding the alleged debt." *Klein v. Credico, Inc.*, Civil No. 18-659 (DSD/BRT), 2018 WL 3404156, at *3 (D. Minn. July 12, 2018). A false but non-material statement is not actionable.

The Court is not persuaded that the alleged misrepresentation in the Letter can be dismissed as immaterial. Instead, it is fair to infer that it could lead borrowers such as Plaintiff to make certain decisions about when and how much to pay—decisions that they might have made differently if they had understood they could avert acceleration by making several smaller payments. (*See* Compl. ¶ 55, 60–62, 72.) As the court in a sister case in the Eastern District of Missouri put it, the Letter's language "could reasonably frustrate the least sophisticated consumer's ability to intelligently choose his or her response to the Defendant's demand." *Spehr*, 2019 WL 4246929 at *6.

For similar reasons, Defendants' motion to dismiss Plaintiff's claim arising out of § 1692e(5) also fails. Plaintiff alleges the Letter threatens action that

10

Seterus did not intend to take.  Defendants respond that Seterus had every intention of making good on the threat to accelerate if Plaintiff did not adequately address the default status of her loan.  But just as the Complaint plausibly alleges that the Letter contained a material misrepresentation, so also does it plausibly allege that the Letter communicated to an unsophisticated consumer that Seterus *intended* to do something it did not intend to do, namely, accelerate the loan if a full payment was not made by the expiration date.  Accepting these allegations as true, Plaintiff has plausibly alleged a violation of § 1692e(5).

Finally, Defendants' reliance on the two sister cases that were dismissed, *Barilla* and *Fordham*, is misplaced.  Although both cases involved FDCPA claims based on circumstances similar to those here, both were dismissed for procedural flaws not present in this case.  *Barilla* considered letters that Seterus sent to borrowers in Florida with the same language about acceleration as the language challenged in this case.  2019 WL 4060154 at *1.  The court dismissed the claims without prejudice because the plaintiffs only "generically alleged" violations of the FDCPA as a whole, and failed to articulate how their allegations mapped to the elements of § 1692e and § 1692f.  *Id.* at *2.  The Complaint here does not suffer from that same deficiency.  (*See* Compl. ¶ 102–113.)  Likewise, *Fordham* failed because of the lack of specificity in the complaint.  2019 WL 3451738 at *4.  The court dismissed FDCPA claims pertaining to letters Seterus sent to homeowners in New Jersey because the plaintiff had not "attach[ed] or quote[d] from any of the New Jersey Final Letters she allegedly received." *Id.*  The complaint also failed

11

"to give approximate dates as to when these letters were received, or the amount owed. Instead, it relie[d] on and recite[d] snippets of a letter sent to a borrower in North Carolina and allege[d] her letters were similar." *Id*. Plaintiff here did not make that mistake. Thus, neither *Barilla* nor *Fordham* stands for the proposition that Plaintiff's allegations about the Letter at issue here fail to state a viable claim under § 1692e.[3]

### 2. Foreclosure

The Complaint alleges a second basis for a claimed violation of § 1692e(5): that the Letter leads its reader to infer that if a full payment is not made by the expiration date, foreclosure will also occur certainly and immediately. Under 12 C.F.R. § 1024.41(f)(1), a loan servicer cannot initiate foreclosure proceedings unless a mortgage is more than 120 days delinquent. Plaintiff argues the Letter would mislead a less sophisticated consumer into believing that Seterus could—and would—foreclose on a loan that is less than 120 days late. (Compl. ¶ 71.) Because that would constitute a threat to take "action that cannot legally be taken," Plaintiff argues it would be a second, separate violation of § 1692e(5).

Defendants point out that the Letter contains no explicit threat of illegal foreclosure, and argue it cannot be fairly interpreted even to imply such a threat. In response, Plaintiff's counsel urged at oral argument that foreclosure and acceleration are

---

[3] Notably, it appears that the courts in both *Barilla* and *Fordham* have allowed the plaintiffs to amend their complaint and re-file. (Pl.'s Mem. Opp'n. Mot. Dismiss at 11 n.3.)

one and the same for the unsophisticated borrower, such that a definite threat to accelerate immediately would be seen as a definite threat to foreclose immediately.

There is no question that acceleration of a mortgage is not the same as foreclosure of a mortgage. An acceleration clause is a contractual provision that, under certain circumstances, requires the debtor to pay off the entire mortgage balance sooner than the due date. *Acceleration Clause*, *Black's Law Dictionary* (11th ed. 2019). Acceleration is therefore often a step on the road to foreclosure, but it does not yet begin the process of terminating the homeowner's interest in the property. More importantly for the purposes of this motion, the Letter, taken as a whole, cannot be viewed as suggesting otherwise, even to the unsophisticated borrower. In contrast with the language on acceleration (where Seterus told Plaintiff that it "*will* accelerate the maturity date of [Plaintiff's] loan"), Seterus indicated only that it "*may* proceed without further notice to commence foreclosure proceedings." (Pl.'s Ex. A ¶¶ 2, 4) (emphasis added). "Failure to cure the default *will* result in acceleration of the sums secured by the mortgage and *may* result in the sale of the property securing the loan." (*Id.* ¶ 3) (emphasis added). Importantly, the Letter explicitly notes that "foreclosure proceedings will not be commenced unless and until allowed by applicable law." (*Id.* ¶ 4.) While the unsophisticated consumer may not know that applicable law gives her 120 days before foreclosure proceedings can be commenced, this explicit statement tells her at the very least that the law has something to say on the subject. In addition, the statement on the second page of the letter tells the borrower, "You have the right to reinstate your loan *after acceleration*. . . If you reinstate your loan after acceleration, the loan no longer will be immediately due in full." (Pl.'s

13

Ex. A at 2) (emphasis added). This would provide the borrower with further reassurance that foreclosure is neither immediate nor inevitable.

As already noted, while the FDCPA protects consumers with below average intelligence, the standard for such action "also contains 'an objective element of reasonableness' which precludes liability based on 'bizarre or idiosyncratic interpretations' of collection activity." *Janson*, 806 F.3d at 437.  In short, the Court concludes that, even when it accepts Plaintiff's allegations of fact as true and draws all reasonable inferences in her favor, the Complaint does not plausibly allege that the Letter could be construed by an unsophisticated consumer as threatening to institute foreclosure proceedings either immediately or before it was legal for Seterus to do so.  Therefore, while the Complaint adequately pleads a cause of action under §§ 1692e(5) and (10) with regard to its discussion of acceleration of Plaintiff's loan, it does not do so with regard to its discussion of the possibility of foreclosure.

### D. Plaintiff's Claims Under FDCPA § 1692f

Plaintiff also raises claims under § 1692f.  This subsection contains a catch-all provision providing that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  It goes on to list conduct that would violate the catch-all,[4] but states that the list is not meant to be exhaustive.  *See* 15 U.S.C. § 1692f;

---

[4] The statute identifies the following as examples of conduct that would violate 15 U.S.C. § 1692f: (1) collection of money not expressly authorized by the agreement; (2) a debt collector's acceptance of a check postdated by more than five days; (3) a debt collector's solicitation of a postdated check; (4) depositing or threatening to deposit a postdated check; (5) causing someone to owe communication charges, such as for collect telephone calls, while concealing the purpose of the call; (6) taking or threatening to take a

14

*Baker v. Allstate Fin. Serv., Inc.*, 554 F.Supp.2d 945, 953 (D. Minn. 2008).

Defendants move to dismiss Plaintiff's § 1692f claims on the ground that they cannot be based on conduct that is already addressed by another section, such as § 1692e. (Def. Reply at 11 [Doc. No. 27].)  Plaintiff disagrees and argues that a single instance of conduct *can* constitute a violation of both § 1692e and § 1692f.  Both positions find some support in the caselaw from this District.

For example, Plaintiff cites *Gorman v. Messerli & Kramer, P.A.*, a case involving a debt collector's attempt to bill the plaintiff for the cost of hiring a process server.  Civil No. 15-1890 (JRT/HB), 2016 WL 755618, at *1 (D. Minn. Feb. 25, 2016).  The court denied a motion to dismiss a complaint that asserted claims under both § 1692e and § 1692f on the basis of that single act.  *Id.* at *5.  Plaintiff also points to a similar ruling in *Neill v. Bullseye Collection Agency*, where a debt collector included the acronym "WWJD" at the top of its collection notices.  Civil No. 08-5800 (JNE/FLN), 2009 WL 1386155, at *2 (D. Minn. May 14, 2009).  The plaintiffs contended that including the religious phrase was intended to evoke shame and guilt in the debtors, and thus violated both § 1692d and § 1692f.  *Id.*  The court denied a motion to dismiss the claims.  *Id.*

In addition, the Eighth Circuit has considered a case in which it applied both § 1692e and § 1692f together, without concluding that the application of one precluded the application of the other.  In *Nelson v. Midland Credit Mgmt., Inc.*, the plaintiff sued

---

nonjudicial action to dispossess a person's property without the right, intent, or legal authority to possess it; (7) communicating with a consumer via post card; (8) using language or a symbol on a debt collection envelope that would identify it as such.

her debt collection agency after the agency filed a proof of claim in bankruptcy court on time-barred debt. 828 F.3d 749, 750 (8th Cir. 2016). The court acknowledged without comment that the one action violated three provisions of the FDCPA, including both § 1692e and § 1692f. *Id.* at 751. ("Because each of these allegations stem from the same conduct—the filing of the proof of claim—this court may consider the provisions together.")

Plaintiff's interpretation has also been explicitly adopted by some circuit courts. *See Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) ("[O]ur prior cases leave us convinced that one action can give rise to multiple violations of the [FDCPA]."); *Field v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) ("We conclude that [Plaintiff] has made allegations sufficient to state a claim under § 1692e and § 1692f. . . .").

But Defendants correctly note that in many of these cases—including both cases from this District[5] and the case before the Eighth Circuit—the argument that the two provisions are mutually exclusive was not explicitly presented to the court and/or not explicitly addressed by the court. Defendants argue that "where the legally untenable overlap of Sections 1692e and 1692f is raised by the defendant and considered by the

---

[5] In their reply brief the *Neill* defendants did include the following sentence, "This Court has recently joined a multitude of other courts that have correctly held that conduct alleged to violate other sections of the FDCPA cannot also be alleged to violate § 1692f. *Baker v. Allstate Financial Serv's, Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008) (Ericksen, J.) (citing cases from S.D. Ohio, E.D. Pa., N.D. Ga., S.D.N.Y. and E.D.N.Y)." Def. Reply Br. at 20, *Neill v. Bullseye Collection Agency, Inc.*, 08-cv-5800 (JNE/FLN) [Doc. No. 43], 2009 WL 1386155. The *Neill* court did not address the matter in its opinion.

court, the overwhelming trend in this district calls for dismissal of Plaintiff's Section 1692f claim."  (Def. Reply at 13.)  This Court agrees.  *See, e.g.*, *Hillbeck v. Accounts Receivable Services, LLC*, Civil No. 16-3345 (DWF/SER), 2017 WL 2080258 at *5 (D. Minn. May 15, 2017) ("[A] viable claim under § 1692f must allege conduct that is not addressed by other provisions of the FDCPA."); *Ness v. Gurstel Chargo, P.A.*, 933 F.Supp.2d 1156, 1164 n.3 (D. Minn. 2013) ("Because § 1692e already prohibits the complained-of conduct in this case, Plaintiffs do not have a claim under § 1692f."); *Baker v. Allstate Fin. Serv.*, 554 F.Supp.2d 945, 953–54 (D. Minn. 2008) ("[Plaintiff's] 15 U.S.C. § 1692f claim also fails as a matter of law, because it is not premised on conduct independent from that pled to support his other FDCPA claims.").

Plaintiff also argues that if the Court does not dismiss her § 1692e claim, it is unnecessary and unwise to make a determination at this juncture on her § 1692f claim. "Even if identical conduct cannot constitute a violation of both statutory provisions, Plaintiff's 1692f claims should not be dismissed until there is an affirmative ruling on Plaintiff's § 1692e claims."  (Def. Mem. Opp'n. Mot. Dismiss at 24 n.11.)  That approach has been taken by some of the courts hearing sister cases against Seterus, including the Eastern District of Missouri.  *See, e.g. Spehr*, 2019 WL 4246929, at *7 ("Because the Court finds that Plaintiff has plausibly asserted a claim for relief under § 1692e to survive a motion to dismiss under Rule 12(b)(6), it is unnecessary at this stage of the litigation to determine whether Plaintiff's allegations independently support a claim under § 1692f."); *contra Wenger*, 2019 WL 2119980, at *1 n.5 ("Because Ms. Wenger's FDCPA claim clearly falls under 15 U.S.C. § 1692e, this Court will dismiss Count I to the extent that it

relies on 15 U.S.C. § 1692f, since both claims are based on the same alleged conduct.").

The Court is persuaded by the reasoning of the courts in this District that have held that § 1692f was written as a safety net to ensure that no unlawful conduct by debt collectors slipped through the cracks, not as a mechanism for doubling down on the same allegations or providing a fallback position for conduct of a type addressed by another section as to which Plaintiff ultimately fails to establish liability. If Plaintiff uncovers a separate factual predicate to support a § 1692f claim, then she may timely move for leave to amend her Complaint to include it. But her current § 1692f claim alleges nothing new and the Court recommends that it be dismissed.

### E. Plaintiff's Allegations of Negligent Misrepresentation

Plaintiff initially included a claim against Defendants for negligent misrepresentation. She has since withdrawn the claim and does not oppose its dismissal. (Pl.'s Mem. Opp'n. Mot. Dismiss at 24 [Doc. No. 23].) Accordingly, it should be dismissed without prejudice. *See Am. Civil Liberties Union of Minnesota v. Tarek Ibn Ziyad Acad.*, Civil No. 09-0138 (DWF/JJG), 2009 WL 2215072, *3, n.2 (D. Minn. July 21, 2009) (granting motion to dismiss as to certain claims because plaintiff did not oppose it).

### F. Defendants' Challenge to Complaint as a "Shotgun Pleading"

Defendants' final challenge to Plaintiff's Complaint is that it is an impermissible shotgun pleading in violation of Federal Rules of Civil Procedure 8 and 10. (Def. Mem. Supp. Mot. Dismiss at 26.) Under Rule 8(a)(2), the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule

18

10(b), Plaintiff must state her claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

The Eighth Circuit has dismissed cases for "shotgun-style allegations," but typically for a failure to plead with adequate specificity, as required by Rule 9. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 407 (8th Cir. 2017). Courts in this District have also rejected complaints that are needlessly long and incomprehensible. *E.g. Gurman v. Metro Housing and Redevelopment Agency*, 842 F.Supp.2d 1151, 1152–53 (D. Minn. 2011) (dismissing a complaint that "sprawled across 60-odd pages" yet was "uninformative").

While there may be respects in which Plaintiff's Complaint in this case could have been more clearly drafted, it does not lack specificity, clarity, or brevity, and any potential ambiguity about the specific sections alleged to be violated by the Minnesota Letter was resolved by Plaintiff's response to the instant motion. Defendants complain that Plaintiff occasionally "reincorporated by reference" previous allegations, but that is not uncommon in this District. Defendants point to a sister case, *Barilla*, where the Plaintiff's FDCPA claims were dismissed as a shotgun pleading. 2019 WL 4060154 at *2. But there the plaintiff only "generically allege[d]" violations of the FDCPA and did not quote specific language from or include as an exhibit a copy of the letter that was sent to Barilla, the named plaintiff. *Id.* The same defects are not present here.

### III.   Recommendation

Accordingly, for the reasons set forth above, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. No.

13] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. Defendants' Motion to Dismiss Plaintiff's claim under 15 U.S.C. § 1692f be **GRANTED** and the claim be **DISMISSED WITHOUT PREJUDICE**;

2. Defendants' Motion to Dismiss Plaintiff's claim for negligent misrepresentation be **GRANTED** and the claim **DISMISSED WITHOUT PREJUDICE;** and

3. Defendants' Motion to Dismiss Plaintiff's claim under 15 U.S.C. §§ 1692e(5) and (10) be **DENIED**.


Dated: October 21, 2019         s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).